UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Robert Becker
7750A Rockwell Ave
Philadelphia, PA 19111

        Plaintiff,

        v.

City University of Seattle
601 Union St #4400
Seattle, WA 98101

And

Diane Beaudry
601 Union St #4400
Seattle, WA 98101

And

Judy Hinrichs
601 Union St #4400
Seattle, WA 98101

And

Melissa Mecham
601 Union St #4400
Seattle, WA 98101

And

Lee Gorsuch
601 Union St #4400
Seattle, WA 98101

And

John Does, 1-10
        Defendants.

CIVIL ACTION NO.:   09-5655

Jury of Twelve (12) Jurors Demanded

1

# FIRST AMENDED CIVIL ACTION COMPLAINT

## I. Jurisdiction

1. This is an action for an award of money damages, attorney's fees and other relief on behalf of Plaintiff, Robert Becker ("Becker"), a former student of Defendant, City University of Seattle ("University"), who has been harmed by the Defendants as a result of Defendants' retaliation for Plaintiff's assertion of his first amendment rights.

2. In pertinent part, this action is brought under the 42 U.S.C. §1983 and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

## II.   Jurisdiction and Venue

3. Jurisdiction of this matter is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332; supplemental jurisdiction over Plaintiff's state law claims granted by 28 U.S.C. §1367.

4. Venue lies in this judicial district in that the events that gave rise to this claim occurred here.

## III. Parties

5. Plaintiff, Robert Becker, is an adult individual and citizen residing at the above captioned address.

6. Defendant, City University of Seattle, is a government institution registered to transact business in the State of Washington, with agents authorized to receive service of process at the above-listed address, providing instructional and educational services to students, maintaining a principal place of business, citizenship and residency at the address above-captioned.

7. Defendant, Diane Beaudry ("Beaudry"), at all times material, was and/or is a professor at University. This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

8. Defendant, Judy Hinrichs ("Hinrichs"), at all times material, was and/or is the Dean of the School of Education at University. This Defendant was acting in concert and conspiracy with other

2

employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

9. Defendant, Melissa Mecham ("Mecham"), at all times material, was and/or is the Vice President of Admissions at University. This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

10. Defendant, Lee Gorsuch ("Gorsuch"), at all times material, was and/or is the President of University. This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

11. Defendants, John Does, 1-10, at all times material, was and/or is an employee of University. This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same.

### IV. Operative Facts

12. In or around August 2005, Plaintiff enrolled in online learning courses offered by University, which, among private tuition, upon information and belief, receives public, federal funds.

13. On numerous occasions during the course of Plaintiff's courses in University, Plaintiff criticized University over course materials, instructors, and other requirements University demanded of its students.

14. On or about January 12, 2009, Plaintiff enrolled in a "Human Nutrition" course taught by Beaudry.

15. Assignments were generated by Beaudry online to the class at large via public discussion board.

16. In pertinent part, assignments involved questions regarding the affect of University, at large, and, specifically, Beaudry's class' education, on students' post-graduation plans.

17. At all times material, assignments required autobiographical information be provided by the students in partial response.

18.     The responses by the students were likewise posted online for each other student to review and perhaps comment.

19.     The assignments and their responses took the form of a public "blog" (i.e., a running public dialogue between and among the students facilitated by Beaudry).

20.     Following Beaudry's instructions to post Plaintiff's graduation plans, Plaintiff submitted a post in which stated that after graduation he planned to "run…without ever looking back."

21.     In response to another assignment as to how Human Nutrition would assist Plaintiff post-graduation, Plaintiff described the course as a "flub" or "fluff" course.

22.     In response to another assignment as to Plaintiff's immediate plans, Plaintiff posted that he wanted to "get out of City U ASAP."

23.     At all times, Plaintiff's posts were responsive to the assignments.

24.     Beaudry replied to Plaintiff's post stating that she had taken offense.

25.     Beaudry again responded to Plaintiff, stating that she believed Plaintiff's posts were disrespectful, threatened to lower Plaintiff's grade in the course, and threatened to bring Plaintiff before University's disciplinary committee.

26.     Specifically, Beaudry advised Plaintiff that Plaintiff had earned a .39 out of a possible 3.13 points on at least one assignment.

27.     Beaudry further stated that the disciplinary committee would teach Plaintiff about the word, "respect."

28.     In response to Beaudry, Plaintiff emailed Beaudry attempted to explain his attempts at public humor, apologized to Beaudry for any offense that she took, and offered to start fresh.

29.     Beaudry did not accept Plaintiff's offer, again threatening the disciplinary committee.

30.     Plaintiff then responded to Beaudry stating that he did not appreciate her threats; Plaintiff was entitled to his opinions.

31.     On or about January 16, 2009, Plaintiff brought his complaints about Beaudry to Hinrichs.

32. On or about January 17, 2009, Plaintiff and Beaudry appeared to reach an amicable agreement, and Plaintiff withdrew his initial complaint.

33. Likewise, on or about January 17, 2009, Plaintiff and Beaudry exchanged emails, in which Beaudry stated that she had considered Plaintiff's position, each agreed to a fresh start, and Beaudry raised Plaintiff's grade on the subject assignment to 2.66 out of 3.13.

34. Nonetheless, on or about February 5, 2009, Plaintiff was contacted by Mecham via email.

35. In retaliation for Plaintiff's protected speech, Mecham informed Plaintiff that on or around January 20, 2009, Beaudry had, despite the informal conciliation, filed a formal complaint with Mecham against Plaintiff.

36. To chill Plaintiff's speech and other's like speech, Mecham informed Plaintiff that he, without notice and opportunity to respond, was being removed from the online version of the course, placed into independent studies, and directed Plaintiff to have no further contact with Beaudry.

37. Plaintiff responded to Mecham, stating that Plaintiff's online postings were within his First Amendment rights.

38. Without notice to Plaintiff or any opportunity for hearing, University held that Plaintiff's posts violated school policy.

39. Without notice to Plaintiff or opportunity for hearing, University denied Plaintiff's then renewed complaints against Mecham and Beaudry.

40. Plaintiff's placement in independent studies hampered Plaintiff's ability to adequately learn the course material and harmed his grade. Plaintiff was intentionally humiliated, literally ostracized and separated from the rest of the student body, and effectively prevented from group learning and classroom discourse.

V.   **Causes of Action**

<u>COUNT I</u>
CIVIL RIGHTS VIOLATION- 1st, 4th, & 14th Amendments
*Plaintiff v. Defendants*

5

41.     At the time of Defendants' actions, Plaintiff was a private individual.

42.     Defendants actions stated above, *inter alia,* were committed under color of state law and were violations of Plaintiff's clearly establish and well settled Constitutional and other legal rights.

43.     Defendants caused plaintiff to suffer by their wrongful conduct all in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

44.     As a result, Plaintiffs suffered and continues to suffer harm, including financial (wage loss, attorneys fees, and loss of earning capacity) and emotional distress, *inter alia*, in violation of their rights under the laws and Constitution of the United States of America, in particular the First, Fourth, and Fourteenth Amendments thereto by Title 42 U.S.C. §§1983 and 1985(c).

45.     Plaintiff's "blogging" was a constitutionally protected First Amendment activity (free speech), responsive to Beaudry's assignments, and, in fact, within the public forum created by University through Beaudry.

46.     As a result, Defendants disciplined Plaintiff by placing him in independent study.

47.     Independent study, without warning, segregated Plaintiff's speech from the rest of the student body rendering thereafter that speech no longer public (i.e., members of the student body could no longer view Plaintiff's responses to assignments and vice-versa).

48.     Defendants' discipline vis-à-vis independent study was retaliation for Plaintiff's public comments about University and Beaudry's class, and meant to stifle and chill not only Plaintiff's future public speech but other students who, Plaintiff having been notoriously and without warning removed from public discourse as discipline for that speech, would necessarily became wary if not halted from like public discourse.

49. University's and Beaudry's preparation, or lack thereof, of students for post-graduation endeavors is a matter of University's community's penultimate concern, which discourse is beneficial for Defendants' claimed like mission.

50. Plaintiff's discipline by Defendants as well as the adjudication of Plaintiff's complaints against aforesaid Defendants were conducted by Defendants in secret, without hearing and due process.

## COUNT II
## CIVIL RIGHTS VIOLATION-MONELL
*Plaintiff v. University and Defendants, in their official capacities*

51. Prior to the events described herein, Defendants developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional right of students, which caused violations of Plaintiff's constitutional and other rights.

52. Defendants', failed to adequately and properly supervise and train in various aspects of online postings, including, but not limited to the laws of the United States, Commonwealth of Pennsylvania, and otherwise.

53. Specifically, Defendants' policy of secretly quieting deemed offensive speech by placement of the speaker in independent study without that speaker's notice and opportunity to respond is Constitutionally violative.

**VI.**   **Prayer for Relief**

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of $75,000.00, plus punitive damages against Defendants individually, jointly and/or severally, attorney's fees and costs, statutory, injunctive and such other relief and costs this Honorable Court deems necessary and just.

PROCHNIAK WEISBERG, P.C.

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG
Attorney for Plaintiffs